[Civ. No. 1462. First Appellate District.—March 29, 1915.]

# SHEPARD K. PEARSON et al., Appellants, v. HERBERT F. BROWN, Respondent.

CONTRACTS—PURCHASE OF REAL PROPERTY—DEFAULT IN INSTALLMENTS OF PURCHASE PRICE—WAIVER.—Under a contract for the purchase of real property calling for monthly payments of installments of the purchase price, in which time is made the essence of the agreement, and it is provided that if payments shall not be made according to its terms, all past payments shall be forfeited as liquidated damages, where the purchaser almost from the beginning of the contract fell behind in making payments at the stipulated dates, but the seller accepted, without objection, payments at irregular intervals and not at the dates fixed by the contract, the vendor waived his right to insist upon the strict letter of the contract and to take advantage of past delinquencies so as to either declare the contract canceled because of them or to claim the forfeiture of such payments.

ID.—NOTIFICATION OF DEFAULT—CONSTRUCTION OF.—In such a case where the seller notified the purchasers that "I have on this date canceled your contracts for lots in the Brown Andrade Tracts on account of nonpayment of installments, as you are now delinquent ten months, and I feel that I have carried this account long enough. However, if at any time within one year from date of this letter you should wish to buy four lots from me, I shall be very glad to apply what payments you have made on any four lots that you may select that I have in any of my tracts at current prices," the utmost effect that can be given to the notification is that the seller intended thereafter to insist upon a strict compliance of the terms of the contracts, and that unless within a reasonable time, the purchasers paid up their deficiency, and thereafter made their payments strictly in accordance with time conditions of the contract, the forfeiture clause would be enforced; and where the purchasers within a reasonable time after such notification sent the seller the full amount due to date, which the latter refused to accept, the purchasers complied with their contract, and failure of the seller to accept constituted a breach of contract on his part, entitling the purchasers to recover payment of the installments theretofore paid.

ID.—CANCELLATION AND RESCISSION.—The word "rescind" when used with reference to a refusal of a party to a contract for the sale of real estate to further proceed with the fulfillment, is not employed in the sense in which it is used in the code sections which refer to the termination of contracts by the technical process of rescission; but it is rather employed in the sense and as the synonym of an abandonment of the contract by the party refusing to longer be bound by its terms.

ID.—RESCISSION—MANNER OF MAKING.—It is not necessary for such a party to use the word "rescind" in order to accomplish what the cases intend by the use of that term. Any appropriate words, or any definite acts, by which the vendor indicates that he will not proceed further with the fulfillment of the contract, and that he will not permit the purchaser to proceed further with the performance of its obligations on his part to be performed, will be taken to amount to a rescission or an abandonment of the contract so far as the vendor is concerned, and will be held to entitle the vendee not in default to his choice of remedies for the breach of the contract on the part of the vendor, in the exercise of which he can either stand upon his contract and insist in a court of equity upon a specific performance, or he can accept the vendor's admitted repudiation and abandonment of the contract and, treating it as rescinded, sue for the return of the money adready paid on it.

ID.—JUDGMENT ON PLEADINGS.—In an action by the purchasers, to recover installments paid on such contracts, where the admissions of the pleadings show such facts, judgment should be rendered in favor of the plaintiffs on the pleadings.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

J. L. Kennedy, and J. W. Henderson, for Appellants.

C. H. Oatman, and W. H. Humphrey, for Respondent.

THE COURT.—This is an appeal by plaintiffs from a judgment on the pleadings in favor of the defendant. The action was one to recover the sum of three hundred and ninety dollars, with interest, alleged to have been paid by the plaintiffs on account of two certain contracts for the purchase by them of certain lots in Richmond from the defendant, which contracts, it was claimed, the latter had broken and abandoned by his refusal to receive further payments thereon, and by his express cancellation of said contracts.

The facts regarding the making and execution of these contracts and the defendant's alleged breach of them, out of which the plaintiffs' claim arises, are, according to the admissions of the pleadings, as follows: On August 21, 1909, the plaintiffs and the defendant entered into a contract by which the former was to purchase from the latter a lot in

a certain tract in Richmond for the sum of eight hundred dollars, to be paid in monthly installments of not less than ten dollars, the first deferred installment to be payable on September 21, 1909, and the balance in monthly installments of ten dollars payable on the twenty-first day of each and every month thereafter until the purchase price was fully paid. These deferred payments were to be without interest, except that it was agreed that if the purchaser should be delinquent for a period of sixty days, interest at the rate of six per cent per annum was to be paid thereon during the period of such delinquency. It was also provided that time was to be of the essence of the agreement; and that if the payments were not made according to the terms and conditions of the contract within sixty days after they became due, then all of the payments were to be forfeited as liquidated damages without recourse at the option of the seller. On the fourteenth day of October, 1909, a similar contract for the purchase of two additional lots in the same tract, for the purchase price of four hundred dollars each, payable by like monthly installments on the fourteenth day of every month thereafter, was entered into between the parties. The admissions in the pleadings show that the plaintiffs commenced making payments on both of these contracts, but that almost from the beginning they fell behind in paying the installments on the stipulated dates, sometimes being only a few days in arrears, and at other times allowing a month or more of delinquency to occur. On their first contract the plaintiffs paid in all and at irregular intervals the sum of two hundred dollars up to May 15, 1911. On their second contract they had paid in all and at like irregular intervals the sum of one hundred and ninety dollars up to May 15, 1911. These various payments were all received by the defendant without any objection on his part that they were not being made on time. No further payments upon the installments of either contract were made or offered by the plaintiffs after May 15, 1911, until December 30, 1911. On December 5, 1911, the defendant wrote plaintiffs a letter in the following words:

"December 5, 1911.—JAMES F. and S. K. PEARSON, Arcata, Calif. Gentlemen:—This is to advise you that I have on this day canceled your contracts for lots in the Brown Andrade Tracts on account of nonpayment of installments, as you are now delinquent ten months, and I feel that I have

carried this account long enough. However, if at any time within one year from date of this letter you should wish to buy four lots from me, I shall be very glad to apply what payments you have made on any four lots that you may select that I have in any of my tracts, at current prices.

Yours very truly,—HERBERT F. BROWN."

This letter was sent by mail to the plaintiffs at their place of residence in Arcata, Humboldt County, and in the ordinary course of the mails probably reached them a few days later. On December 30, the plaintiffs paid to one J. G. Dolson, the agent of the defendant to whom their previous installments had been paid, the sum of one hundred and twenty dollars upon each contract, which, according to the admitted averments of the plaintiffs' complaint, would have fully paid up all back installments then delinquent, and all interest upon deferred payments to that date. On January 19, 1912, the defendant wrote again to the plaintiffs, informing them that he had received their said payments of December 30th, but that he returned same, inasmuch as he had canceled their contracts on December 5th, and that he could not reinstate them as to the lots in question. On January 24, 1912, the plaintiffs demanded of the defendant that he retain and credit the said money, and apply the same upon the payments and interest on said contracts, which demand the defendant again refused to comply with. Thereupon and on February 16, 1912, the plaintiffs demanded the return of the sum of three hundred and ninety dollars which they had previously paid on said contracts; and this being also refused, this action was brought to recover said sum.

The court on motion rendered judgment on the pleadings in favor of the defendant, from which judgment the plaintiffs have appealed.

Upon the foregoing admitted facts, the first question that arises is as to what the rights of the respective parties were on December 5, 1911, the date of the defendant's first letter to the plaintiffs informing them that he had canceled their contracts. On that date the plaintiffs were about eight months in default in respect of their monthly installments upon each of these contracts; and, according to the strict letter of their agreements making time the essence of such contracts, the plaintiffs would then have been subject to the penalty of having their contracts canceled, and of a forfeiture

of the payments which they had theretofore made. On the other hand, however, the defendant, by repeatedly receiving without objection the several payments which the plaintiffs had been tardily making upon these contracts, must be held by his action in so doing to have so far waived his right to insist upon the strict letter of the contracts as to be no longer entitled to take advantage of the plaintiffs' past delinquencies so as to either declare the contracts canceled because of them, or to claim the forfeiture of such payments as he had theretofore received without objection when they were not being made on the dates fixed by the contract. (Pomeroy on Contracts, sec. 337; *Boone* v. *Templeman,* 158 Cal. 291, [139 Am. St. Rep. 126, 110 Pac. 947]; *Stevinson* v. *Joy,* 164 Cal. 279, [128 Pac. 751]; *Sausalito etc. Co.* v. *Sausalito Imp. Co.,* 166 Cal. 302, [136 Pac. 57]; *Standard B. K. Co.* v. *Anderson,* 121 La. 935, 15 Ann. Cas. 251, [46 South. 926]; *Barnett* v. *Sussman,* 116 App. Div. 859, [102 N. Y. Supp. 287].)

The foregoing cases not only sustain the rule above set forth, but they also undertake to distinguish and declare what the rights of a vendor are as to all subsequent payments due or to become due upon such contracts after such waiver on his part of the default of the vendee as to prior dilatory payments. The rule in this regard is well expressed in *Stevinson* v. *Joy,* 164 Cal. 279 [128 Pac. 751], wherein it is said: "Where time is made the essence of the contract for the payment of rent or other payments of money, and this covenant has been waived by the acceptance of the rent or other moneys after they are due, and with knowledge of the facts, such conduct will be regarded as creating such a temporary suspension of the right of forfeiture as could only be restored by giving a definite and specific notice of an intention to enforce it."

The rule is also well stated in *Barnett* v. *Sussman,* 116 App. Div. 859 [102 N. Y. Supp. 287], wherein it is held that "The acceptance by the vendor from the beginning of payments not made according to the contract, but irregularly as to time and amount, the purchaser being at all times in arrears, was a waiver of the forfeiture clause, which could not be revived except on notice to the purchasers that, if they did not pay the balance due within a reasonable time specified, the forfeiture would then be exercised."

This statement of the rule accurately defines what the rights of the respondent in this case were on December 5, 1911, the date of his letter to the appellants, in which he assumed to cancel the appellants' contracts by reason of their default in making payments according to their terms. The respondent was not entitled to work such cancellation, and his said letter could not be given that effect. The utmost effect under the foregoing rule which would be given to it would be that of a notification to the vendees that the vendor intended thereafter to insist upon a strict compliance with the terms of the contracts; and that unless within a reasonable time the vendees paid up their deficiency, and thereafter made their payments strictly in accordance with the time conditions of their contracts, the forfeiture clauses would be enforced. The vendees apparently placed this construction upon the defendants' letter of December 5, 1911, which the evidence shows they received through the mails at their home in Arcata, Humboldt County, on December 11, 1911, for the admitted pleadings show that on December 30, 1911, they paid to J. G. Dolson, the agent of defendant authorized to receive installments due on such contracts, and to whom their previous payments had been made, the sum of one hundred and twenty dollars on each contract, which fully paid their delinquencies thereon to that date. In so doing we think they acted within a reasonable time after receipt of defendants' letter; and we are also entirely satisfied, under the authority of *Stevinson* v. *Joy,* 164 Cal. 279, [128 Pac. 751], that when the plaintiffs had paid these sums of money to the agent of the defendant they had fully relieved themselves of their past default, and were in the position of having fully complied with the conditions of their contracts up to the date of such payments. This being so, it was the duty of the defendant to have accepted such payments, and this failure and express refusal so to do constituted a breach of the contracts on his part. The pleadings show that on January 19, 1912, the defendant sent back to the plaintiffs the money they had paid on December 30th, and again informed them that he had canceled their contracts, and refused to further proceed with their fulfillment. On January 24, 1912, the plaintiffs again demanded that the defendant retain the sums which they had paid on December 30th, and which had not yet been actually returned to them, and apply the same upon

their contracts. This the defendant again refused to do; whereupon the plaintiffs on February 16, 1912, demanded the repayment to them of the sums which they had previously paid in installments upon each of the contracts, and this being also refused, they instituted this action for the recovery thereof.

The contention of the respondent is that, conceding that he had not the right to abruptly terminate the contracts between himself and the plaintiffs in the manner and to the extent attempted in his letter of December 5, 1911, still his use of the word ''cancel'' in that and his later letter in respect to said contracts, is not to be considered as the equivalent of the term ''rescind,'' nor as amounting to a rescission of the contracts on the defendant's part, and hence, he argues, there being no rescission, the plaintiffs are not entitled to recover what they had paid upon the purchase price. In making this contention the respondent seeks to bring this case within the reasoning of Mr. Justice Henshaw in the case of *Glock* v. *Howard,* 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]. We think, however, that the reasoning by which the respondent seeks to do this is based upon an over-refinement of terms. The word ''rescind,'' when used with reference to the refusal of a party to a contract for the sale of real estate, to further proceed with the fulfillment, is not employed in the sense in which it is used in the code sections which refer to the termination of contracts by the technical process of rescission; but it is rather employed in the sense and as the synonym of an abandonment of the contract by the party refusing to longer be bound by its terms. It is not necessary for such a party to use the word ''rescind'' in order to accomplish what the cases intend by the use of that term. Any appropriate words, or any definite acts, by which the vendor indicated that he would not proceed further with the fulfillment of the contract, and that he would not permit the plaintiffs to proceed further with the performance of its obligations on their part to be performed, will be taken to amount to a rescission or an abandonment of the contract so far as the vendor is concerned, and will be held to entitle the vendees not in default to their choice of remedies for the breach of the contract on the vendor's part, in the exercise of which they could either stand upon their contracts and insist in a court of equity upon their specific perform-

ance, or, they could accept the defendant's attempted repudiation and abandonment of the contracts, and, treating them as thus rescinded, sue for the return of the money already paid on them. The plaintiffs chose the latter course, as we think, under the admitted facts of this case as disclosed by the pleadings, they were entitled to do. It follows that the plaintiffs and not the defendant should have had judgment upon the pleadings.

Judgment reversed, with instructions to the trial court to enter judgment in favor of the plaintiffs for the amount prayed for in their complaint, with interest from January 19, 1912, at the legal rate.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 27, 1915.