[Civ. No. 2607. Second Appellate District. Division One.—November 29, 1918.]

JOHN N. KERR, Appellant, v. DAVID C. REED et al., Respondents.

VENDOR AND VENDEE—DEFAULT OF VENDEE—LIABILITY OF VENDOR FOR MONEY PAID.—Under a written agreement for the sale of land for a consideration payable in installments, where the vendee made default as to the final payment which became due after making

his first payment, and the vendors thereupon treated the contract as abandoned and conveyed the property to others, without in any manner protecting the rights of the vendee, and without offering to perform the conditions of the contract on their part, the vendors were liable to the plaintiff for the return of the money paid by him, notwithstanding a provision in the contract that time was of the essence of the contract, and that upon the failure of the vendee to make the deferred payments as agreed the contract should at once become null and void and the vendors should be at once released from any and all obligations thereunder.

APPEAL from a judgment of the Superior Court of San Diego County.  C. N. Andrews, Judge.  Reversed.

The facts are stated in the opinion of the court.

Dwight D. Bell for Appellant.

Luce & Luce for Respondents.

CONREY, P. J.—On or about the fourth day of December, 1912, an agreement in writing was entered into between the defendants as vendors and the plaintiff as vendee, whereby the defendants agreed to sell and convey to the plaintiff certain real property in the city of San Diego.  The purchase price was twenty-five thousand dollars, of which five thousand dollars was paid upon the signing of the agreement.  It was provided that the purchaser would pay the sum of five thousand dollars on or before one year from the date of the contract, "and the balance of $15,000 to be paid by note and mortgage, executed by the party of the second part or his assigns in favor of the parties of the first part, and to be secured by the property described herein.  Said mortgage to become due three years from date hereof, and to be executed at the time of the second payment of this agreement, and to draw interest at the rate of 6% per annum, payable quarterly.  All deferred payments to draw 6% interest per annum, payable quarterly from date hereof."  The contract further provided as follows: "And the party of the second part agrees to pay all State, Municipal and County Taxes and assessments of whatsoever nature which are or may become due on the premises above described after date hereof.  Time is hereby declared to be of the essence of this contract, and should pur-

chaser fail or neglect to make said deferred payments, or any of them, at the times and in the manner herein provided, then and in that event this receipt and contract shall at once become null and void, and the said parties of the first part shall be at once released from any and all obligations to make any conveyance hereunder, or to convey the property herein described to said purchaser. It being agreed that it is impossible to fix and determine the actual damage arising out of the failure of said purchaser to make said deferred payments, it is hereby agreed that all moneys paid upon the purchase price of said property shall be by the parties of the first part retained and held as and for liquidated damages arising and caused by the failure of the said purchaser to comply with the terms hereof. And the parties of the first part, on receiving such payment, at the time and in the manner above mentioned agree to execute and deliver to the party of the second part or his assigns, a good and sufficient deed conveying said property to said party of the second part or his lawful assigns, and to furnish a certificate of title from the Union Title and Trust Company, showing property free and clear of encumbrance from date of November 23rd, 1912.''

In this action the plaintiff seeks to recover all moneys paid by him under said contract, being the five thousand dollars paid as above stated, and certain interest payments made prior to December 4, 1913, and certain other small sums which plaintiff claims that after December 4, 1913, he paid on account of interest. The complaint, after setting forth the terms of the contract by copy thereof, alleged that it was the understanding and intention of the parties that the plaintiff was to have possession and control of the premises described in the contract, and that immediately upon the execution and delivery of the contract the defendants delivered to and the plaintiff accepted possession and control of said premises; that afterward, on or about the fifteenth day of June, 1914, or thereafter and prior to the commencement of this action, the property was sold by the defendants to one Horace B. Day. On or about July 14, 1914, the defendants conveyed the property in question to the said Horace B. Day, who recorded his deed at that time, and who did not at that time know of the existence of said contract between the plaintiff and the defendants, and did not know that plaintiff claimed or had any interest in or to the property. Said Horace B. Day took and

received said property for value and in good faith. The defendants made said conveyance to Horace B. Day without reserving or protecting the plaintiff's rights under his contract. The said contract was never recorded. The foregoing statements of fact are contained in the complaint and are not denied by the answer, except that defendants deny that any payment on account of the contract was made on or after December 4, 1913.

Omitting a detailed statement of those allegations of the complaint which are denied by the answer, it suffices to say that the complaint alleges that the plaintiff remained in possession and control of the property described in the contract until on or about the fifteenth day of June, 1914, whereas the answer denies that plaintiff retained such possession or control after December 4, 1913. The complaint further alleges that at all times except as in the complaint mentioned, the defendants and each of them treated said contract as in existence and in full force and effect, and that on or about the fifteenth day of June, 1914, the defendants and each of them refused longer to be governed by said contract or observe the conditions and obligations thereof to be by them observed and performed, and rescinded, repudiated, and abandoned the said contract by resuming possession and control of the land and premises mentioned in the contract, and by selling the same and conveying the same as before stated, and by the defendant D. C. Reed notifying this plaintiff that he, said plaintiff, no longer had any interest in and to said land and premises described in the contract; that the plaintiff accepted and acquiesced in the said rescission, and on or about the thirtieth day of July, 1914, the plaintiff demanded of the defendants the moneys he had paid under said contract, minus the reasonable value for the use and occupation of the premises and all rentals received by the plaintiff from said property during the time that he was in possession of the same, to wit, five thousand six hundred dollars, and demanded the return of said contract from the defendants; with all of which demand the defendants refused to comply. On the contrary, the defendants by their answer deny that on or about the fifteenth day of June, 1914, the defendants refused longer to be governed by said contract or to observe the conditions or obligations thereof, but allege that the defendants assumed possession of the land mentioned in the contract on December 5, 1913; and

allege that the said D. C. Reed notified the plaintiff immediately after he failed to make the deferred payment of December 4, 1913, that the plaintiff no longer had any interest in and to said land and premises.

The case came on for trial before the superior court without a jury. Oral and documentary evidence was introduced on behalf of the plaintiff. Plaintiff having rested, the defendants moved for judgment of nonsuit on the ground that upon the trial the plaintiff had failed to prove a sufficient case in this, that the action is brought for the recovery of a portion of the purchase money paid on a forfeited contract; that failure of payment has been shown on the contract December 4th and that no waiver of the forfeiture has been shown by the evidence in the testimony. The motion was granted and judgment of nonsuit was duly entered, from which judgment the plaintiff appeals. The plaintiff testified that on December 10, 1913, which was the first time that he saw defendant Reed after November 20, 1913, plaintiff told Reed that he had been unable to make the payment due on December 4th and would like to have some written agreement in regard to the forfeiture; that Reed told him not to worry, just to let it run along; that Reed did not then, or at any time prior to July, 1914, notify plaintiff that his contract was at an end, or was forfeited; that plaintiff told Reed that he could not make the interest payment as it was due, and Reed said "to do the best I could with it"; that in March, 1914, Reed told plaintiff that he had an opportunity to trade the property for certain bonds which Reed considered to have a stated value, and said "that at that price we could get our money out of it"; that Reed never offered to make a conveyance of the property to plaintiff.

The motion for nonsuit should have been denied. The contract rights of the plaintiff were not forfeited by his mere failure to make the final payment due from him on December 4, 1913. (Civ. Code, sec. 1439; *Boone* v. *Templeman,* 158 Cal. 290, 297, [139 Am. St. Rep. 126, 110 Pac. 947].) The evidence is that the defendants never made any offer of performance of their obligations under the contract. The payment due from plaintiff on December 4, 1913, was not of an intermediate installment. It consisted of a certain sum of money, together with a note and mortgage. These together constituted the final payment then due. Concurrently with that final payment the property was to be conveyed to the vendee.

On the performance of those concurrent acts, the contract would thereby be brought to an end. It follows, therefore (giving to the evidence the effect to which it was entitled on a motion for nonsuit), that at the time when defendants made their conveyance to Horace B. Day, the contract rights of the plaintiff had not become forfeited.

The admitted facts in this case show not only that the defendants sold and conveyed the property to a third person during the time of existence of the plaintiff's contract and without the plaintiff's consent; they further show that such conveyance was made in disregard of the rights of the plaintiff, and under such circumstances that those rights were not protected. The facts bring the case within the rule stated in *Brimmer* v. *Salisbury,* 167 Cal. 522, 531, [140 Pac. 30], where the point now under consideration was covered as follows: "The gist of the matter then is this, that a vendee is entitled to rely upon the security of the vendor's title, whatever it may be, in the making of his installment payments. A vendor will not have breached his contract if he shall have conveyed the property subject to or under circumstances such as do protect the rights of his vendee. But where his conveyance has been in disregard of those rights, under such circumstances that those rights are not protected, then this is a breach of contract and a fraud on the vendee. Where a vendee contracts with one having none or an imperfect title, he contracts in the hope or expectation that the vendor may be able to perfect the title. Such is not the case where the vendor has title and thereafter parts with it. Of the essence of the contract is the security to the vendee, in his payments, of the title which the vendor has, and if the vendor parts with that title to the impairment or destruction of that security, the vendee may be heard justly to complain, and it is of course no answer to say that the vendor thereafter *may* be able to go into the open market and repurchase the property. Common experience tells us that such an expectation is in its nature but a remote possibility and that such a vendor has not the slightest intention of so doing."

In *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1, at page 10, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], referring to the remedies which are open to the vendee upon a breach by the vendor of a covenant to convey, it is said that the vendee may treat the vendor's breach as an abandonment,

and may himself abandon the contract, "when, the contract having thus come to an end, he may sue at law to recover what he has paid, in an action for money had and received; for, the contract being at an end, the vendor holds money of the vendee to which he has no right, and to repay which, therefore, the law implies his promise." (See, also, *Pearson* v. *Brown,* 27 Cal. App. 125, [148 Pac. 956].) In the case at bar the admitted facts, together with the facts shown by the evidence introduced by the plaintiff, bring the plaintiff within the rule last above stated. The vendor having broken the contract, the vendee also abandoned it, and relies, as of right he may, upon his right to the return of money paid by him upon a consideration which has failed.

The judgment is reversed.

James, J., and Myers, J., *pro tem.,* concurred.